The last case, number 151010, United States v. Belize, Luis, Joel, Diaz-Rosado Good morning. May it please the court, my name is Alejandra Bird and I represent appellant Diaz-Rosado in this matter. I'd like to begin by offering my humblest and most sincere apologies for arriving late this morning not just to the court but to everyone here for the disruption in the schedule and I appreciate the court's indulgence in allowing me to give my argument a little later. I'll get right to it. I'd like to reserve one minute for rebuttal if I may. Mr. Diaz-Rosado should have been acquitted in this case because the government failed to establish one of the essential elements of the crime. The crime of carjacking requires that, in addition to a violent taking of an automobile, that the crime has been perpetrated with the specific intent to cause death or serious bodily injury to the driver. In this case, the evidence shows that the perpetrator grabbed the victim's hand which was holding the car keys and held on to the keys while he was pushing her and when the ring with the car keys gave way, she was pushed to the ground. As a result, she had some scratches and a bruise. Could I, as I read the record, I looked at, is it Vasquez, is that the fellow, the officer? Vasquez is the bystander who intervened. He said that your client slammed the 65-year-old woman to the ground. She testified that he threw me onto the cement sidewalk. So I guess the question, as I see it, is throwing a 65-year-old woman onto a cement sidewalk something that suggests an intent to seriously harm her? I don't think it does because of the way in which he described it. Now the bystander was, what he was seeing, he was seeing through the rear of the vehicle so he couldn't see everything which was going on according to his own testimony. His perception was that she was thrown to the floor which is what a push to the floor would look like. But the way that she describes the event is that he was grabbing, trying to grab a hold of her keys and at the same time pushing and shoving her and when the keys gave way she fell to the ground which would have felt like being thrown. But I think she said he was pushing and shoving me and quote threw me onto the cement sidewalk. But what she describes is not that he grabbed her, he grabbed her and threw her to the sidewalk. What he, she, he's just, what she describes is that she was pushed as the keys were being pulled away from her. So you would say that we should rule that as a matter of law pushing a person to the sidewalk is not something that we can infer an intent to cause serious harm. I think that it cannot be, it cannot be evidence beyond a reasonable doubt of an intent to cause death or serious bodily injury. And how about his engaging the car's gears and putting it into reverse when people are trying to get a child out of the back of the car? It seems pretty dangerous. Well the thing is that you have to, this is a specific intent crime. So you would have to be able to infer that he was aware that that's what was going on at the moment. That a child was leaving the car just as he was pulling away which could be dangerous. But there's no, there's no evidence that he was actually at the time he was struggling with someone. So, and the evidence that was, that was given by Mr. Vazquez, when he describes the event, what he said was, actually I have the quote here. He said, the key, the bystander, right? Screams to the victim, grabbed the girl and then the victim, and I'm quoting, the victim got up, she opened the door, she grabbed the girl and took her out of the car. She hugged her and she turned around with her back to where I was and she just stayed there hugging the little girl like ecstatic. So he's seeing all of this happen. She picked up the girl, she took her out of the car, turned around and with her back to the car, she just remained there frozen hugging the little girl to her chest. While this was going on, the guy had been able to see what was going on. The girl was safely out of the car before any of the, before anyone was put in danger. And he, he describes it like that, that he was able to see her holding the child outside the car frozen before the car actually pulled, before he got out of the car and then car pulled away. So this issue, I mean, most carjacking cases, virtually all of the ones that I have been able to evaluate involve at least some kind of weapon, usually a firearm and either an implied or explicit threat to give me a car or I will kill you or I will shoot you with the gun. Now, it doesn't mean that there has to be a gun involved, but there has to be something from which you can glean an intent from the perpetrator, a specific intent to cause serious bodily harm to the victim. Here there was no threat, actual or implied. In fact, there was no communication whatsoever from the perpetrator to the victim. There was no firearm. There was no knife. There was no weapon of any kind. There was no punching, choking, biting, kicking. There was a pushing and shoving in the words of the victim. So here I think that if it were a lower standard, we might be able to make some inferences, but the fact is the government could not have been considered to have proven beyond a reasonable doubt that there was a specific intent to cause death or serious bodily harm. But don't the cases hold that conditional intent will suffice? And if the facts taken in the light most favorable to the government are that he pushed the 65-year-old woman to the ground, cannot a reasonable juror infer that he would have done whatever was necessary, including running her over? I think that we would need more evidence to be able to prove that beyond to be to be able to say that it was proven beyond a reasonable doubt. I think that we would need to have more evidence than that. There are much more forceful ways to incapacitate someone in order to take away their car. Absolutely. But we're trying to find out where to draw the line. Right. In this case, the perpetrator clearly chose what was the least injurious way to take away the keys, which was pulling the keys and pushing the person away from the keys. The age, 65 years old, doesn't really mean too much to me as such. It's a 55-year-old that was put in the grave and some that are running marriage laws. So is there anything in their records that is describing this particular 65-year-old? Not that I can recall. This 65-year-old was obviously asked by the mother of the child to go pick up her child at school. There are photographs of the bruises and the scratches. I don't recall any photograph of the actual victim in the record. I have to assume that she was able bodied because she was doing this particular task. I agree with the court that 65 nowadays may not mean what 65 used to mean. She testified? She did testify. The jury saw her? Yes. In addition to the intent issue, this conviction should be reversed because it rests on an improperly admitted confession. There are three main problems with this confession. The first is that the court did not find with unmistakable clarity that the alleged confession was voluntary. The second is that the court's comments when it made its decision suggest that it may have inverted the burden of proof and instead of requiring the government to prove that the confession was voluntary, did something else other than that. The third problem is that the finding that the alleged confession was voluntary is erroneous as a matter of law. Now, with regard to the first problem, I remit this court's attention to the case of U.S. v. Feliz, the 2015 case which is cited in the brief, which explains there are statements in this decision or comments that this court made which are very similar to some of the comments made in U.S. v. Feliz to the effect that there was some controversy but there are credibility issues that should go to the jury. Now, what that suggests is that the court itself did not make credibility determinations, although it said it was doing so, but it clearly had two conflicting versions of how that confession had been taken that it did not reconcile and it did not resolve the disputes between them. So, although the state, for example, the court said that the state prosecutor who testified about the, what she knew about the confession was credible and the police were credible, but, and then he recognized inconsistencies, including recognizing that while either she's lying, the prosecutor, or the officers are lying, one of them is lying, and that's at appendix page 422, but he decided that nevertheless the matter should go to the jury. And how is it relevant whether he was, quote unquote, on drugs or not, unless there was his state of mind or his condition to coerce him? You know, if a guy just walks into a station and he's on drugs and he sits down and he writes out a confession and hands it to the death sergeant, that's, there's no issue of consent there, is there? There may be a reliability issue regarding, but as far as consent, there's no coercion. Well, the problem here is that in the custodial interrogation setting, total control, the police have, or law enforcement has complete control over whether there is a record, over whether there is a record that the confession is voluntary or not. Sure, that's always, that's true whenever there's not a video. I'm getting, what I'm getting at is this whole troubling, a conflicting testimony about whether he's on drugs or not. I mean, some of the officer's testimony is hard to reconcile with the record, um, but it seems to be a side show because the real show is, was there coercion or not? And, and what other than speculation goes to the suggestion that he was coerced? He doesn't claim he was coerced. There's no suggestion anyone struck him, that he was there for eight hours. Well, the defense attorney chose not to present his testimony, uh, which cannot be held against the defendant. No, but it means there's no evidence there of coercion. Well, the problem is that the government is the one that has the burden to show that the confession was voluntary. And they testified, right, that they didn't coerce him, that he sat down and wrote it out voluntarily. Right. Stoned or not. The problem with that, the problem with that is that we really don't know. Not only is there no record, but the, the officer's testimony is not credible. Uh, first of all, because he made a different statement to the state prosecutor on the evening of the arrest. Well, not on coercion. In other words, they have these bizarre statements about whether they knew or thought the guy was behaving oddly or on drugs. And you make a strong point on that. I'm just trying to link that up to where you need to go, which is you need to get to, not just that it's an unreliable confession because he was stoned, but you need to go that they coerced the unreliable confession out of them. And, and that's where, what credibility issue is there? Well, if you'll allow me to paint a picture, and there's something of a hypothetical, right? A person gets arrested, he gets taken to the police station. And since he's kind of acting dopey, the police officer makes sure he takes him to the side. He's the only one who interviews him. And he guides him through a confession and then puts him in the cell and makes sure that nobody talks to him for a while. He, the guy gets taken to a lineup and he's sliding sideways at the lineup so other people notice, right? So this information then comes to the prosecutor. Uh, and the prosecutor, you know, interviewing all of the that she really can't use this confession because of the circumstances in which it's given. The officers then come back later in a different case, in a carjacking, in a federal carjacking case. And now they've changed their story. None of them remember anything about, uh, about any sobriety issue. And if you look at the testimony of the officers with regard to their conference with the prosecutor, they're all over the place. Some say the sobriety issue was never discussed. Another one says it was never discussed, but then goes back to say, oh, but it was the prosecutor who brought it up, uh, after she read the confession. So the, the problem is that since it is the government who has the burden to show that the confession was voluntary and the only evidence that they have brought here is the officer who had complete control over this defendant. It's his testimony that he looked fine, that he wasn't drunk, that there was no problem, that he spontaneously decided to confess and wrote out one paragraph, signed it. Oh, and then by the way, wrote another paragraph and signed it. I mean, there are many, there are many points in this case that raise an inference that this confession wasn't voluntary. The signatures are different from the waiver form to the confession. Uh, the, the confession, right, the alleged confession is very oddly worded. So I think that the defense did within the, the framework of something that happened outside of anyone else's presence, outside of any recording, because it's not just a video recording. It could have been an audio recording. It could have been a field sobriety test. It could have been, uh, get a supervisor to sit here and talk for 15 minutes to this person so that we have some kind of record that he wasn't, that he wasn't, uh, drunk because the confession states that he was on pills. So I think that there, I think that the, and if the government is going to rely on a confession for a conviction and for a, to bring a case, it should be prepared with a record of the fact that that confession was voluntary. Thank you. Good morning, Your Honors, and may it please the Court. Francisco de Sousa Martinez on behalf of the United States. On a Thursday afternoon, Mrs. Irizarry went to pick up her four-year-old granddaughter from her kindergarten class. While Mrs. Irizarry was buckling her granddaughter into the car seat in the back of the car, she sensed an unknown presence behind her. At that moment, Your Honors, as Díaz Gonzalo describes in his reply brief, a violent taking took place. The government agrees with that characterization. When Mrs. Irizarry turned around and found herself face-to-face with Díaz Gonzalo, Díaz Gonzalo did not make any verbal demands for the car or the car keys. He did not give Mrs. Irizarry an opportunity to voluntarily hand over the car keys in order to prevent any further action on his part. Rather, he, in an effort to take advantage of his physical advantage over Mrs. Irizarry, went straight and grabbed her by the hand when she was holding the car keys and began a physical altercation with her. When Mrs. Irizarry showed resistance, Díaz Gonzalo did not back down. He did not step away. He did not flee the scene. He upped the ante. He violently threw her, or as Mr. Vazquez describes, slammed her to the floor, and at that moment, the car key came out of her hands. If we affirm the factual conclusions and the result of the jury on this record below, would we be the first circuit court to affirm under this statute a conviction where no weapon, unless you call the car what was a weapon, but no other weapon of any type was If we look at the history of the statute, the carjacking statute originally required a firearm. That was replaced with this intent element, showing that Congress was not particularly concerned with whether or not they had a particular external weapon being used at the moment.  You rely on conditional intent. Yes, Your Honor. And that case is the case written by Justice Stevens, Holloway, in which a gun was involved. So just having a gun would imply, if you go along with Steve, which we have to, of conditional intent, that there is a possibility, by the very fact that the assailant has a weapon of that nature in his hand, that if he doesn't get his way one way, he will try for violent means. Therefore, you have a conditional intent. Where is the proof of that at the time of which it is required? At the time that the hijacking is initiated, that there was that conditional intent? Well, Your Honor, the conditional intent in this case can be deduced from a totality of the circumstances. At the time he went to get the car keys, he exerted additional force. Every single time he grabbed her hand. How is that conditional intent to cause serious bodily harm? Your Honor, we would suggest that he didn't merely grab her hands. Yes, he did grab her hands, but there was more to it. There's more thought into it after that. Not after, Your Honor. At the moment he grabbed her hand, like I said, he did not make any verbal demands for the car keys. He did not rely on his intimidating physical superiority over his, for lack of a better term, his weapon of choice in this case, which was his physical advantage over her. His use of force was his weapon in this case. And if we look at it, in the process of perpetrating this carjacking, he exerted an escalating amount of force every time that an obstacle or barrier was put in the way of him being able to drive away with that car. If we look at the record, Your Honor, when he confronted Ms. Cidisarri, he, like I said, upped the ante and threw her violently to the pavement in order to get that car key. When he entered that car and was ready to leave with the little girl still in the back seat, he was confronted with a man who was his physical equal. He was undeterred by this and he pushed back. Like Mr. Vazquez said, while Mr. Vazquez was still in the car, he managed to turn on that key and was ready to take off. The only thing that's on this record to show that he did not exert any more force than was needed was because Mr. Vazquez and Ms. Cidisarri relented and backed off once that little girl was safe. I'm sorry, I didn't mean to interrupt you. But I'd like to go back to Diana's question. You're not aware of any other cases in which this has been held without any sort of weapon, as the term is usually used, a knife, even a club or anything like that? Admittedly, Your Honor, I haven't been able to do that. Would that make any difference in your argument? No, Your Honor. Like I said, Your Honor, if we look at the history of this statute, the statute originally required that the perpetrator have a firearm. It was specifically limited to firearm carjacking. But why did they decide to include all other weapons? Well, they would have specifically said, with intent to cause serious bodily harm with a weapon and then proceed to define that weapon. The statute itself does not require the presence of a weapon. But it requires intent to cause serious bodily harm. Yes, Your Honor. Someone can and someone can cause that serious bodily harm by physical force. But pushing someone into the pavement, you call that serious bodily harm? Your Honor, this was more than just a push. This was... A show? I would not characterize it as such, Your Honor. The testimony from Mr. Vasquez and Ms. Tizari was that she was thrown by Mr. Diaz-Rosado, or in the case of Mr. Vasquez, that he slammed her to the floor when she did not relent. She did not scratch her knees, Your Honor. She took photographic evidence of her injuries three days later, and it was shown that these had developed into hematomas that went all the way from both her knees and up to her thighs. These were significant injuries, Your Honor. It was not just... Not that she merely tripped to the floor. So, in sum, Your Honor, what the government is stating is that in perpetrating the carjacking, Diaz-Rosado engaged in escalating physical force that was geared more towards than just merely frightening the victim. Every step of the way, when confronted with additional resistance or physical force and violence needed to achieve his goal of getting away in that car. These events not only shed light as to what he did, but what he didn't do. Like I said, he did not flee. He did not step back. Every time that a new obstacle that was more challenging than the one previous arose, he stepped up to the challenge and pushed forward. What could you help me on? What precisely, and maybe it doesn't, but what precisely, I can tell from the briefs, what precisely does the record show as to the position of the grandmother, the child, Vasquez, and potentially anyone else when the defendant put the car into gear? From the record, it is clear that Mr. Diaz-Rosado is in the driver's seat. Mr. Vasquez is still in the car struggling with him, and it is not clear if the girl is yet outside the car. My understanding from reading of the record is that the girl is still in the car at that moment. Is all of that evidence in the testimony of Vasquez and the grandmother, or is there any other witness that we would need to read their testimony to get a sense of the answer to my recollection of the witnesses in this case were Mrs. Irizarry and Mr. Vasquez? Moving on to the voluntariness of Diaz-Rosado's confession, Your Honor, Diaz-Rosado in this case gave a knowing, voluntary, and uncoerced written confession. This last aspect is key to resolving this issue. Now Vasquez, no, I'm sorry, Diaz-Rosado states that his was an involuntarily made written confession because he was under the influence of controlled substances at that time. The case law is clear, however. Police coercion is a necessary predicate to a finding of involuntariness. Excuse me, do we have the appendix of this case here? I'm sorry, go ahead. As I was saying, police coercion is a necessary predicate to a finding of for finding of police coercion. It needs to be shown not only that the police knew that he was an intoxicated state in a case like this where he says he was under influence, but that they used that knowledge in order to exploit his vulnerability and get that coerced confession out of him. It seems to me that he's done enough to at least put the question into issue, that that question is at least joined. And then as I understand the law, as your sister counsel said to us, it becomes the government's burden to show that it was voluntary. But that's not the process that the district court followed as I understand it. There was not an objection to that, and so to the extent that that issue is important, it's here on plain error. So, shouldn't what we'd be focusing on is whether, if the confession was involuntary, shouldn't we be focusing on whether it was prejudicial, what it meant in the case, or have I missed a step along the way here? Your Honor, you are correct. The government admittedly incorrectly stated the law and stated that the defendant, in this case, had the burden of showing that it was not knowing involuntary. However, upon a further reading of the record and the law, there is an initial burden of production where they have to rebut the presumption that this was a confession made through proper police proceedings. In that sense, Your Honor, there was no prejudice in having him go first because there is that rebuttable presumption that he needs to overcome before we get to the government who always has to carry the burden of proof of showing that it was, in fact, a voluntary confession. In this case, Your Honor, the witnesses were presented by the defense. The government admittedly did not cross them. Then after the presentation of, well, with the exception of the prosecutors in the district court, when these witnesses had given their testimony, the district court said that it was actually leaning towards suppressing. At that moment, the prosecutor presented Mrs. Irisari as a witness to the live lineup, and she testified that she did not see anything particularly out of the ordinary at the lineup. She stated that they all seemed to be acting normally at that time, so it did serve to push back the notion that he was, in fact, even under the influence of controlled substances at that time in the sense that she did corroborate that aspect of the agent's testimony. But doesn't that at most get us to equipoise? And if it's the defendant's burden, okay, but since it's not, I don't know how we can tell from this record that the government has met its burden, assuming that the issue was here under plain error review and that the question is whether there was an error. I don't... Well, as the district court stated in the record, regardless of who calls who in this case, it was going to be the same witnesses for both sides. Both sides were interrogated, and they affirmatively stated, both at the suppression hearing and at trial, the police officers, and particularly Mr. Mendez, the officer who took the confession, that he never observed anything out of the ordinary in Mr. D'Astrozao's behavior and that he did not egg on or in any way coerce the confession from coming out of D'Astrozao. Rather, what happened was he was given his veranda rights, and at that moment, D'Astrozao gave his written confession. That was the end of it, and this took place in an open space in police headquarters at a desk. It was not in an enclosed environment. It was not an eight-hour interrogation. This was a 15-minute process, and from that point, he moved on to the cell. This is what the victim testified to. Question, what was the consequence of the fall that you received? The answer is, as a consequence, I got a hematoma on my left knee, and of course it hurt, and I was scratched. I'm sorry. I got scratched on my hands, both of my palms, and on my fingers. I also got some scratches on my arm. Exhibit 5 was put in evidence, and of course it shows hematomas. You show that. I'm still questioning why that is serious bodily injury. Right now, the question is not whether she did in fact suffer a serious bodily injury, but whether he had an intent to cause serious bodily injury, if necessary, to get away with hijacking the car. Certainly, this is helpful to show the amount of force exerted at the time. It certainly goes to showing the amount of effort or force exerted at that time, Your Honor. But again, if we look at the broader picture here, and before he was able to drive away with that car, it slowly went in increasing fashion, this force that he used. So what the government maintains is that this was an escalating situation in which he didn't back off or show any signs of basically showing that he would at any point give up on his goal of hijacking the car in this case. Thank you, Your Honor. I just, just to quickly add, I, I, the court, the government certainly in its brief did not cite any other cases in which a similar fact pattern would have fulfilled the intent element for the carjacking statute. And when I tried to look for a case, I certainly did not find one. Did you see any, go ahead. Yes. Did you see any cases that discussed the difference between carjacking and robbery, where robbery of a car, taking the car? I did not. Okay. I didn't look for that. I just want to remind again the court, because I didn't mention it during the, my principal argument, the standard here is not negligence or recklessness. It is specific intent. Now the government, the government keeps relying on that every time he met resistance, the perpetrator of this attack upped the ante and was willing to go further and further. But he, that we cannot assume from that, that he would have gone to the ultimate consequence of causing death to, to the victim. But, but I thought the cases held that where there is a firearm that's displayed, that the jury can infer that. Well, because I'm trying to understand the difference between that and, and the physical confrontation here. Well, the firearm is a lethal weapon and it's present. Just be showing it to threaten. It doesn't mean that he's, that he's going to shoot somebody. Well, it implies it's, it's certainly an implied threat. I mean, that's how the victims always take it. Certainly if they have a gun pointed at their head, which is literally what some of the cases say, or, or at their stomach or any other part of their body, that's an implied threat. It's barely implied. I mean, it's almost an explicit threat, but that is the next thing that's coming if any resistance comes from them. Well, you would agree that it doesn't have to be a firearm. No, I agree that there doesn't have to be a firearm, but there does have to be something. Right, but we have to look at the physical force that was used here, the, all the circumstances, and based on his behavior, make a decision. One, did he use force that would cause the act he did in the story? Secondly, if he didn't, then we're in the conditional analysis. Did he demonstrate an intent that he would have if necessary? Right. And on this record, I believe that you cannot make that, that that inference really cannot be made, not beyond a reasonable doubt. How is he going to know whether she's going to bump her knee or hit her head on the pavement? Well, it doesn't necessarily mean he doesn't. Well, the thing is, the standard is not negligence or recklessness. If he was willing to really hurt this person, he would have brought a weapon, or he would have punched her, or he would have kicked her, or he would have choked her, I mean, there has to be something there. And I don't mean to diminish the experience that this victim had of, you know, of this robbery, which obviously must have been very scary. But it really is more scary because of the speculation of what the person might do. There has to be something in the record, something in the facts, something that he said, something that he said to somebody before he engaged in the robbery, something that he did actually there, that would give us, I'm sorry, go ahead. To me, the scary thing is his persistence in trying to take the car and put it in here, in these chaotic circumstances, just seemed fraught with danger to all involved. And yet, he went ahead and did it, even after he knew there was resistance from several people, the child involved, and put the car in here. And yet, the child was taken out of the car. Oh yeah, no one got hurt. And the bystander got out of the car and was not hit by the car when he was pulling away. So there's no real evidence to show that he was, there is some recklessness involved, but there is no evidence to really show that he had the intention that something serious would have happened. It's like shooting off a gun when there's a crowd around, just in the air, you know, around, I'm not trying to hit anybody, but... Respectfully, a firearm to me is a very different situation. It is a lethal weapon. It is a weapon which is specifically designed to either kill or severely disable the person who it's used against. So to me, the fact that so many of these cases do involve firearms, this is a situation which is very different from any of the other cases that I have seen for carjacking. Does the record show whether the ground on which the altercation between him and the victim, the 65-year-old woman, whether that was pavement or grass or... I believe it was, the description in the record is that it was pavement. Just on another point, we are not on plain error review with respect to the burden of proof issue. The reason is this. Counsel for the government in the suppression hearing said that it's their burden, it's their burden, and it wasn't completely clear whether she was talking about the burden of production, the burden to raise an inference, the burden to... She may have said burden of proof, but that was counsel for the government in the hearing. The judge never said, I am going to put the burden of proof on the defendant. The judge never said that. No, but counsel said, if it's my burden, here's my evidence. Right, but what he said textually was, if it's my burden, not if it's my burden of proof. Well, that's not an objection. No, no, but that's not what I mean. What I mean is he didn't say, if it's my burden of proof, as if accepting the burden of proof, he may have had a burden of proof. He may have felt, or the court may have imposed a burden of production. It was in response to the government saying that it was his burden. I don't believe that that was contemporaneous. So your argument is that it's preserved? It is preserved. We believe it is preserved, and if I could just say, even if it were not preserved, I think that there is certainly plain error here, and the prejudice can be seen from these. Thank you. Okay, thank you. All rise. This session of the Honorable United States Court of Appeals is now recessed until 930 tomorrow morning. God save the United States of America and this honorable court. Thank you.